

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Game, Fish & Oyster Commission
Austin, Texas

Attention:  Mr. William J. Tucker,
Executive Secretary

Gentlemen:

Opinion No. 0-4329
Re: Does House Bill 9, Acts, 46th
Legislature, relating to sale
and lease of mineral estates
in State lands transfer right
to sell shell, etc. formerly
exercised by the Game, Fish &
Oyster Commission to the School
Land Board

We have your letter of March 19th which reads as follows:

"Enclosed is a letter from Colonel Buckner, to-
gether with a brief from Mr. W. P. Hamblen of Houston,
in reference to the question of the Game, Fish and
Oyster Commission's authority to handle or sell sand,
shell, mudshell and gravel and deposit the revenues
therefrom in the Sand, Shell and Gravel Fund to be
used for the benefit of certain operations of this
Department.

"In accordance with appropriations made by the
Legislature of this State, we call your attention to
the fact that the last and previous legislatures for
many years have appropriated the Sand, Shell and Gra-
vel Fund for certain use by this Department.

"Since the Game, Fish and Oyster Commission will
hold a meeting on April 9, we hope that you may give
us a ruling by that date on the question of whether
the Game, Fish and Oyster Commission is authorized to
dispose of sand, shell, mudshell and gravel and de-
posit the receipts obtained therefrom in the Sand,
Shell and Gravel Fund to be used for the purposes
provided by law and as appropriated."

For many years the Game, Fish & Oyster Commission has administered the sale of all marl, gravel, sand, shell and mudshell from all state-owned waters, under the authority of Chapter 3, Title 67, Article 4051, et seq., Revised Civil Statutes of Texas, 1925. Your question is whether this authority might have been transfereed to the School Land Board by House Bill No. 9, Acts 1939, 42nd Legislature, which confers upon said Board the power of "leasing of the mineral estate in river-beds and channels and islands, lakes and boys within the tidewater limits and the bed of the sea belonging to the State of Texas." We believe the answer to this question is not to be found in court decisions construing the phrase "mineral estate" as the same may have been used in deeds of conveyance, but rather in the legislative intent as reflected by the several enactments under consideration and their legislative history. These questions have been extensively discussed in the able brief submitted to you by Mr. W. P. Hamblen, which you attached to your letter. We agree with the reasoning and conclusions of said brief and take the liberty of incorporating it in our opinion:

"This is in reply to your inquiry as to whether, under the present law, the Game, Fish & Oyster Commissioner has the authority to sell marl, gravel, sand, shell or mudshell situated in bays, rivers, etc. of the state, as provided in Articles 4016, et seq., Revised Statutes 1925, or whether said statutes have been impliedly repealed by Articles 5421c-3 (passed by the 1939 Legislature). The latter statutory provision provides that the 'mineral estate' in river-beds and channels and in areas within tidewater limits, including lakes, bays, etc., are set aside and dedicated to the permanent school fund, and jurisdiction thereover shall be exercised by the School Land Board created by said 1939 Amendment. If shell is a 'mineral' within the meaning of such amended statutes - particularly Article 5421c-3, 1939 - then it would seem that the Game, Fish & Oyster Commissioner does not have the right to sell shell as he has customarily done under Article 4053d, Revised Statutes 1925.

"To determine whether or not the 1939 Amendment to Article 5421c-3 had the effect of impliedly repealing the statutes authorizing the Game, Fish & Oyster Commissioner to sell shell, etc., will require an investigation of the statutes in question for the purpose of determining the intention of the legislature in

passing the recent amendment. This intention of the Legislature can, it is believed, be established by a consideration of the following general statutory provisions on the subjects involved.

"A study of the existing statutory provisions reflects that the Legislature in 1925 (Title 67, Articles 4016 et seq.) created the Game, Fish & Oyster Commissioner and set out his duties and powers, among which were an exercise of jurisdiction over the use or taking of marl, shell, mudshell, etc. from lakes, and bays owned by the State. An elaborate set of statutes were passed charging the Commissioner with detailed duties as to the enforcement of our game laws and the conservation of our wild and marine life. The duty of enforcing the oyster laws, granting permits for oyster beds, issuing licenses for removing oysters from oyster beds, etc., was given the Commissioner. Article 4051 specifically provides, among other things, that all shell, mudshell or gravel located on the bottom of any lake, bay, etc., belongs to the State and are placed under the 'management, control and protection of the Commissioner,' and that none of same shall be 'purchased, taken away or destroyed, except as provided herein, nor shall any oyster beds or fish hatcheries within the territory included herein be destroyed, except as herein provided.' Article 4052 expressly invests the Commissioner with all powers and authority necessary to carry into effect the provisions of Title 67, as well as full charge and discretion over all matters pertaining to the sale, taking or distributing of 'marl, sand or gravel of commercial value, etc.' Article 4053 provides that anyone desiring to purchase gravel, shell or mudshell, or otherwise operate within the waters under the jurisdiction of the Commissioner shall file an application therefor which may be granted only after the Commissioner is satisfied that the removal thereof will not injuriously affect any oysters, oyster beds or reefs, fish inhabiting waters, etc. Article 4053d authorizes the Commissioner, with the approval of the Governor, to sell marl, shell, etc., upon such terms and conditions as he may deem proper, but for not less than 4¢ per ton, and that 'the proceeds arising from such sales shall be transmitted to the State Treasurer and be credited to a special fund hereby created to be known as the Sand, Gravel and Shell Fund of the State, etc.'

"It is apparent that the foregoing statutory provisions contemplate that the sale of marl, gravel and mudshell from the bay shall be made upon such terms and under such circumstances as will not, in the opinion of the Commissioner, injure the oyster beds and marine life of the bay, and that the funds received from the sale thereof shall be used for purposes of enforcement of sand, shell and gravel laws and in the establishment and maintenance of fish hatcheries.

"In determining whether the above statutory provisions are impliedly repealed by the 1939 Amendments to Articles 5421 et seq., particularly as applied to the authority of the Game, Fish & Oyster Commissioner to sell shell from the bay, it might be helpful to investigate the numerous statutory provisions of which Article 5421C-3 is a part.

"Article 5421C-3 et seq. (passed in 1939), and the original statutory provisions amended thereby are a part of Title 86 dealing with 'public lands' which title contains numerous statutory provisions creating the Commissioner of the General Land Office and setting forth his duties and powers. It includes Chapter 4, dealing with 'oil and gas' and the production thereof from public owned lands. Chapter 6 deals with patents issued by the State, and Chapter 7, of which the Amendment in question is a part, contains 'general provisions' which create the permanent school fund, university fund, and asylum fund. It is interesting to know that Article 5416 excepts from the unappropriated public domain granted to the permanent school fund of the state 'that included in lakes, bays and islands along the Gulf of Mexico within tidewater limits.'

"It seems to me that all of Title 86, covering public lands, deals with the fee title and oil and gas leases on state owned lands, and that if the Legislature, in passing Article 5421C-3 (1939), had intended to include in the term 'mineral estate,' the marl, shell and mudshell in bays and all areas within tidewater limits, it would have said so. Article 5353 (passed or re-enacted by the 1925 codification which included, of course, the above statute dealing with the Game, Fish

& Oyster Commissioner) specifically covers 'Gulf
Lands' and provides that the Land Commissioner shall
have the right to lease for 'oil and gas' the bays,
etc., located within the tidewater limits. Article
5421C, Section 8 (also passed by the 1939 Legislature)
provides that the tidewater area 'shall be subject to
lease by the Commissioner to any person, firm or corp-
oration for the production of minerals, except gold,
silver, platinum, cinnabar, and other metals that may
be therein or thereunder, etc.' in accordance with the
provisions of Article 5353, et seq. (Revised Statutes
1925).

"It is clear to me that the provisions preceeding
Article 5421C (some of which were passed by the 1929,
1931 and 1933 Legislatures) deal with oil and gas leases,
and that when the Legislature used the term 'mineral
estate' in Article 5421C-3, it meant oil and gas, and
not marl, shell or mudshell which are comprehensively
covered by Title 67 (Article 4016, et seq.) dealing
with 'Fish & Oyster Commission.' I think this construc-
tion is supported by the jurisdiction heretofore as-
sumed by the Game, Fish & Oyster Commission over the
sale of shell, and also by the development or history
of the oil and gas industry in the coast area up to
1939. The purpose of the 1939 Amendment (Article 5421c-
3) was merely to set aside to the permanent free school
fund the minerals (oil and gas) in the river-beds and
channels within the tidewater areas, and to abolish the
Board of Mineral Development (created by the 43rd Legis-
lature in 1933) by creating the School Land Board.

"In addition to the foregoing reasons, which are
based upon a consideration of the general statutory pro-
visions on the subjects in question, there are the fol-
lowing additional reasons why 'mineral estate' as used
in Article 5421c-3 (passed by the 1939 Legislature),
should not be construed to mean marl, shell or mudshell
located in the bay or tidewater areas, to-wit:

"1. Section 7 of the Amendment, Article 5421c-3,
sets out the authority of the School Land Board; it pro-
vides that the Board shall adopt rules of procedure and
regulations for the sale and leasing of the areas 'in-
cluded herein not inconsistent with this Act and other

laws on the subject, for the sale and leasing of school and asylum lands and the leasing of the mineral estate in river-beds and channels and islands, lakes and bays within tidewater limits and the bed of the sea belonging to the State of Texas.' The amendment neither expressly, nor by inference, sets out any manner or method by which shell, etc. could be sold; the preceding sections of Article 5421c speak only of oil and gas leases and the royalty which the state shall receive thereunder.

"2. To hold that the statutes providing that the sale of shell, etc. shall be made by the Game, Fish & Oyster Commissioner, and that the funds therefrom applied to a particular purpose, were impliedly repealed' by the Amendment in question would, it is believed, disrupt the whole purpose of the Game, Fish & Oyster Laws, rob the Commission of much of its operating revenues without providing for a board or commission to perform many of its existing duties.

"3. It is well established by the authorities that a special law (such as Title 67 dealing with the Game, Fish & Oyster Commissioner) is not repealed by a subsequent general law unless it is expressly so stated or intended. Sullivan vs. Galveston, 17 S. W. (2d) 478, Affm., 34 S. W. 808; Burkhart vs. Brazos River, etc., 42 S. W. (2d) 96; Paul vs. State, 106 S. W. 448; Andreas vs. City of Beaumont, 113 S. W. 614, et seq.

"4. It is also a general rule of statutory construction that repeals by implication are not favored, and that a subsequent act will be reconciled whenever possible. Miller vs. Smith, 65 S. W. (2d) 417; Ellis vs. Holcombe, 69 S. W. (2d) 449; Winterman vs. McDonald, 102 S. W. (2d) 167; Meek vs. Wheeler, 125 S. W. (2d) 331, and Statutes Key No. 159."

You are advised that in our opinion, the authority of the Game, Fish & Oyster Commission to administer the sale of marl, gravel, sand, shell and mudshell under the provisions of Chapter 3, Title 67, Article 4051, et seq., Revised Civil Statutes of Texas, 1925, is unimpaired and unaffected by House Bill No. 9, Acts 46th Legislature, 1939.

APPROVED APR 1 1942

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Walter R. Koch_
Walter R. Koch
Assistant

WRK:ej